IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| HUGH L. RILEY, Register No. 1104541, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-4256-CV-C-NKL |
| | ) | |
| LARRY CRAWFORD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

    Plaintiff Hugh L. Riley[1], an inmate confined in a Missouri penal institution, brought this case under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its corresponding jurisdictional statute, 28 U.S.C. § 1343. This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1. Plaintiff names as defendants numerous personnel of the Missouri Department of Corrections (MDOC).

    In support of his claims for equitable relief and damages, plaintiff states the following: (1) his assignment to Housing Unit 8, long-term administrative segregation, is punishment, and defendants are not complying with their own regulations concerning (a) his assignment to administrative segregation, and (b) the rights, privileges and benefits of being housed in administrative segregation; (2) the defendants use false conduct violation reports to maintain control of inmates while they are assigned to administrative segregation, and to keep them confined in administrative segregation; (3) he and other inmates are denied mental health treatment for all major and minor medical needs in the administrative segregation unit, claiming there is a breach of contract between MDOC and failure to comply with state law; (4) he and

---

[1] Mr. Riley, on behalf of himself and fifteen other inmates, attempts to file suit as a class action against 29 defendants, making nine or more basic allegations. The complaint is signed only by Mr. Riley. Mr. Riley is not an attorney, and therefore, cannot file lawsuits on behalf of other individuals. Because no other parties have signed the complaint, it will be evaluated on the allegations made by plaintiff on behalf of himself. The court will not at this time give consideration to forming a class action, although, should the need arise, that issue may be readdressed.

other inmates in administrative segregation are denied the reasonable opportunity to practice their religion because they are denied the things necessary for the practice of their religion and that the denials are unreasonable; (5) he and others are forced to suffer extreme cold during the winter because the defendants, for the purpose of punishing them, shut off heat and/or blast cold air into the cells, causing them to suffer extreme cold; (6) he and other inmates are refused telephone calls, except for emergencies from their families; (7) he and other inmates are refused reading materials sent from outside sources; (8) he and other inmates are denied canteen privileges the same as are other administrative segregation inmates and this denial is punishment; (9) he and other inmates are "illegally tortured" in administrative segregation;

Plaintiff has requested leave to proceed without prepaying the filing fee and costs. 28 U.S.C. § 1915(a). Pursuant to the Prison Litigation Reform Act, the court is required to screen prisoner cases and must dismiss a complaint, or any portion of the complaint, if satisfied that the action is frivolous, malicious, or fails to state a claim under which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1) and (2). Additionally, under section 1915(g), if a prisoner, while incarcerated, has had three cases dismissed on any of these grounds, the court must deny leave to proceed under section 1915(a). The only exception to the successive petition clause is when the prisoner faces "imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

Plaintiff's claims regarding his assignment to segregation, false violation reports, and denial of privileges, and allegations that such actions are punishment should be dismissed. These claims, in essence, raise a due process claim.

To establish a due process violation, plaintiff must show a deprivation of a liberty or property interest protected by the Fourteenth Amendment. Paul v. Davis, 424 U.S. 693, 710-12 (1976). The Due Process Clause does not protect prisoners from every adverse change in their confinement. Sandin v. Connor, 515 U.S. 472, 478 (1995). If the conditions and degree of confinement are within the sentence imposed and do not otherwise violate the Constitution, prisoners have no claim under the Due Process Clause. Montayne v. Haymes, 427 U.S. 236, 242 (1976); Meachum v. Fano, 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low to maximum security prison, because confinement in any state institution is within normal limits or range of custody which the conviction has

2

authorized the state to impose). See also Hewitt v. Helms, 459 U.S. 460, 468 (1983) (prisoners have no inherent right to remain in general population). Disciplinary action taken in response to a prisoner's misconduct "falls within the expected parameters of the sentence." Sandin, 515 U.S. at 485.

A liberty interest in avoiding particular conditions of confinement, however, may arise from state policies or regulations, subject to the limitations of Sandin. Wilkinson v. Austin, 545 U.S. 209, 222 (2005). Sandin provides that to determine whether prisoners have a liberty interest under state law, the court must look at the nature of the deprivation. Sandin at 481. Generally, state-created liberty interests are "limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. Segregated confinement does not normally "present a dramatic departure from the basic conditions" of prison life. Id. at 486. Thus, pursuant to Sandin, an inquiry into the existence of a state-created liberty interest in avoiding restrictive conditions of confinement does not focus on the language of the state regulations regarding these conditions, but rather, the nature of the conditions themselves in "relation to the ordinary incidents of prison life." Wilkinson, 545 U.S. at 223.

The Eighth Circuit has held that the conditions of segregation do not impose an atypical and significant hardship in relation to a prisoner's ordinary incidents of prison life; thus, even assignment to segregation, without cause, does not impose an atypical and significant hardship that would implicate a liberty interest protected by constitutional due process. See Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2001); Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003). Plaintiff's claims challenging his assignment to administrative segregation, generally, and resulting denial of privileges, and the alleged false conduct violations received, fail to allege conditions of confinement which implicate a liberty interest protected under the Due Process Clause. Plaintiff's claims challenging prison officials' failure to follow their own policies and process also do not provide for a liberty interest which would be protected by due process. Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (citing Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996) ("Due Process Clause does not federalize state procedural requirements")). Process or procedure is not an end in itself; rather, its purpose is to protect a

substantive interest, in this case the conditions of a prisoner's confinement. See Kennedy v. Blankenship, 100 F.3d at 643 (citations omitted).

Plaintiff's claims that he is denied mental health treatment for all major and minor medical needs in the administrative segregation unit, and there is a breach of contract between MDOC and failure to comply with state law should also be dismissed. Plaintiff has not made any allegation that he has a serious medical need for mental health treatment.

Plaintiff's claims that he is refused telephone calls, except for emergencies from his family, should be dismissed. There is no constitutional right to access to a telephone. See Kennedy v. Blankenship, 100 F.3d at 643 (loss of privileges in administrative segregation, including telephone privileges, did not constitute an atypical and significant hardship).

Plaintiff's claims that he is refused reading materials sent from outside sources should also be dismissed. An inmate has no right to access to books and reading materials sent from outside sources and the court takes judicial notice that plaintiff admits inmates can obtain material from inside the prison. Absent a specific allegation such as denial of religious reading material, the denial of reading materials from outside sources does not state a claim.

Plaintiff's claims that he is "illegally tortured" in administrative segregation should be dismissed. Plaintiff provides no facts, examples, or specifics involving alleged torture. This conclusory allegation of torture is insufficient to allow plaintiff to proceed on this claim.

Plaintiff seeks preliminary injunctive relief as to his many claims set forth in his complaint. Although the federal courts have broad power to grant or deny equitable relief in a civil rights action, Holt v. Sarver, 442 F.2d 304 (8th Cir. 1971), a "large degree of discretion is vested in the trial court" in determining whether an injunction should issue. American Home Investment Co. v. Bedel, 525 F.2d 1022, 1023 (8th Cir. 1975), cited with approval in Rittmiller v. Blex Oil, Inc., 624 F.2d 857 (8th Cir. 1980). See also Cole v. Benson, 760 F.2d 226 (8th Cir. 1985). In Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109 (8th Cir. 1981), the court delineated the factors to be considered in ruling a motion for preliminary injunctive relief.

> Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the plaintiff; (2) the state of balance between such harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest.

4

Id. at 113.  Further, "[t]he dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently-existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights."  Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1981) (quoting Holiday Inns of America, Inc. v. B. & B. Corp., 409 F.2d 614, 618 (3d Cir. 1969)).  Thus, the inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  Dataphase, 640 F.2d at 113.  The burden of proof is on the party seeking injunctive relief.  United States v. Dorgan, 522 F.2d 969, 973 (8th Cir. 1975).

Additionally, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."  Devose v. Herrington, 42 F.3d 470 (8th Cir. 1994).

For the reasons set forth in this report, recommendation and order, some of plaintiff's claims should be dismissed and his remaining claims do not warrant preliminary injunctive relief and can be addressed through the normal processing of this case.

Plaintiff will be allowed to proceed on his claim that he is forced to suffer extreme cold during the winter because the defendants, for the purpose of punishing him, shut off heat and/or blast cold air into his cells, causing him to suffer extreme cold.

Plaintiff will also be allowed to proceed on his claim that because he is assigned to administrative segregation, he is denied the reasonable opportunity to practice his religion because he is denied the things necessary for the practice of his religion and that the denial is unreasonable.

Although these allegations may not be sufficient to withstand a motion to dismiss or for summary judgment, they are sufficient, when liberally construed, to allow plaintiff to proceed at this stage.

The Prison Litigation Reform Act of 1995 requires inmates to pay the filing fee when bringing a civil case or filing an appeal in forma pauperis.  28 U.S.C. § 1915.  The records available to the court indicate plaintiff is capable of making an initial payment of $13.44[2] toward

---

[2]The initial payment is assessed at "20 percent of the greater of (A) the average monthly deposits to the prisoner's account; or (B) the average monthly balance in the prisoner's account

5

the filing fee. Plaintiff should contact prison officials to have the initial payment processed. In the future, prison officials will withdraw funds from plaintiff's account and forward them to the court, until the filing fee is paid in full. If plaintiff fails to make the initial payment, his claims may be dismissed for failure to comply with court orders. Fed. R. Civ. P. 41(b).

Pursuant to L.R. 7.1, suggestions in opposition to pending motions should be filed within twelve days after the motion is filed. Reply suggestions should be filed within twelve days after the suggestions in opposition are filed. In some circumstances, the court will give the parties additional time to file suggestions or reply suggestions. Unless an order is issued extending the time, responses and suggestions must be filed within the twelve days allotted by the Rule. Requests for an extension of time should be filed prior to the expiration of the twelve days allowed for a response. Responses and suggestions filed out-of-time, without prior leave of court, may not be considered when the court issues its ruling on the pending matter.

Plaintiff also filed motions for appointment of counsel, pursuant to 28 U.S.C. § 1915. There exists no statutory or constitutional right for an indigent to have counsel appointed in a civil action for damages. Wiggins v. Sargent, 753 F.2d 663, 668 (8th Cir. 1985); Watson v. Moss, 619 F.2d 775, 776 (8th Cir. 1980) (per curiam). Rather, "[i]n civil rights matters the court *may* pursuant to [28 U.S.C. § 1915(e)], 'request' an attorney to represent a party if, within the court's discretion, the circumstances are such that would properly justify such a 'request.'" Mosby v. Mabry, 697 F.2d 213, 214 (8th Cir. 1982).

The trial court must exercise "'a reasoned and well-informed discretion'" in deciding whether to appoint counsel. Sours v. Norris, 782 F.2d 106, 107 (8th Cir. 1986) (citation omitted).

The factors to consider in determining whether or not to appoint counsel have been articulated as follows:

---

for the 6-month period immediately preceding the filing of the complaint or notice of appeal." The installment payments will be assessed at "20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid." 28 U.S.C. § 1915. If plaintiff has not signed an authorization for release of inmate account funds, he will need to do so promptly.

6

> Foremost among the 'certain factors' that an appointing court must consider is an analysis of the merits of the indigent litigant's claims from both a factual and legal standpoint. [It is] clear that a court need not appoint counsel when it considers the indigent's chances of success to be extremely slim. In addition to the merits of a case, a court may consider any of a number of factors. Among these factors are the complexity of the legal issue presented and the capability of the litigant to recognize and present the issues, the complexity and conflicting nature of the facts, the ability of the litigant to investigate his case, and the relative substantive value of the claims presented.

Caruth v. Pinkney, 683 F.2d 1044, 1048 (7th Cir. 1982) (citations omitted). See also Rayes v. Johnson, 969 F.2d 700, 703 (8th Cir. 1992); Johnson v. Williams, 788 F.2d 1319 (8th Cir. 1986).

Some of the problems inherent in the appointment of counsel in pro se civil cases brought by indigent litigants were discussed by this court in Ferguson v. Fleck, 480 F. Supp. 219 (W.D. Mo. 1979), at page 222:

> The Eighth Circuit has ruled that members of the Federal Bar should expect such appointments, on an infrequent basis . . . . Recognizing the time-consuming burdens undertaken by attorneys prosecuting Federal civil litigation, and the problems which would be invited if all colorable claims of indigents were automatically referred to appointed counsel, a troublesome issue of selectivity is imposed on the courts. Care must be exercised to avoid altering the practice of infrequently asking lawyers to serve in civil matters, an assumption underlying the *Peterson* decision. Meritorious claims, however, would generally benefit from the assistance of counsel, but the court has few facilities permitting a forecast of substantial merit.

This court has followed a liberal policy of appointing counsel in civil actions brought by prisoners in nonfrivolous cases. Green v. Wyrick, 428 F. Supp. 732, 741 (W.D. Mo. 1976).

Although the court does have the inherent power to appoint counsel in limited circumstances, the United States Supreme Court has held that "[28 U.S.C.] § 1915(d) [now (e)] does not authorize the federal courts to make coercive appointments of counsel." Mallard v. United States Dist. Court for the Southern Dist. of Iowa, 490 U.S. 296, 310 (1989).

The issues in plaintiff's complaint are not complex and at this stage in the proceedings, the court does not deem it necessary to appoint counsel. Plaintiff's claims are yet subject to challenge by dispositive motions. After the parties have had an opportunity to file the appropriate motions and the court has ruled on said motions, plaintiff may again request appointment of counsel.

7

IT IS, THEREFORE, ORDERED that plaintiff's motions for appointment of counsel are denied, without prejudice. [3, 5] It is further

ORDERED that plaintiff is granted leave to proceed in forma pauperis, pursuant to the provisions of 28 U.S.C. § 1915, on his claims regarding denial of religious services and denial of heat. It is further

ORDERED that within thirty days, plaintiff make an initial payment of $13.44 toward the $350.00 filing fee. It is further

ORDERED that within thirty days, the Attorney General of Missouri notify the court, in writing, for which defendants he will and will not waive service of process. It is further

ORDERED that defendants answer or otherwise respond, pursuant to Fed. R. Civ. P. 4 and 12, within sixty days, if service of process is waived, or within twenty days after service of process, if service of process is not waived. It is further

ORDERED that defendants are granted leave to depose plaintiff at his place of incarceration. It is further

RECOMMENDED that, pursuant to 28 U.S.C. § 1915A, the remainder of plaintiff's claims, i.e., defendants not complying with their own regulations regarding his assignment to administrative segregation; false conduct violations; denial of canteen privileges, mental health treatment, telephone calls, and reading materials; and that he is "illegally tortured," be dismissed for failure to state a claim on which relief can be granted under 42 U.S.C. § 1983. It is further

RECOMMENDED that plaintiff's requests for preliminary injunctive relief be denied. [4]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within twenty days. The District Judge will consider only exceptions to the specific proposed findings and recommendations of this report. Exceptions should not include matters outside of the report and recommendation. Other matters should be addressed in a separate pleading for consideration by the Magistrate Judge.

The statute provides for exceptions to be filed within ten days of the service of the report and recommendation. The court has extended that time to twenty days, and thus, additional time to file exceptions will not be granted unless there are exceptional circumstances. Failure to make

specific written exceptions to this report and recommendation will result in a waiver of the right to appeal.  See L.R. 74.1(a)(2).

Dated this 26th day of February, 2007, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge